IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TANYA L. GREEN-WRIGHT,

    *Plaintiff*,

    v.

    Civil Action No. ELH-17-3199

JPMORGAN CHASE BANK, N.A. et al.,

    *Defendants*.

## MEMORANDUM OPINION

Plaintiff Tanya L. Green-Wright has sued her mortgage servicers, JPMorgan Chase Bank, N.A. ("Chase") and Rushmore Loan Management Services LLC ("Rushmore"). ECF 18. She alleges, *inter alia*, breach of contract, fraud, and violations of state and federal laws in connection with a foreclosure proceeding on her home. ECF 18 (Amended Complaint).[1]

The Amended Complaint asserts five separate counts against defendants: Violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code (2013 Repl. Vol., 2017 Supp.), §§ 13-101 *et seq*. of the Commercial Law Article ("C.L.") (Count I); Detrimenal [sic] Reliance (Count II); Violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq*. (Count III); Fraud (Count IV); and Breach of Contract (Count V). *See* ECF 18. Along with the Amended Complaint, plaintiff submitted a letter dated November 26, 2014, from Chase to plaintiff, regarding a loan modification. ECF 18-2 (Loan Modification Letter).

---

[1] The case was originally filed in the Circuit Court for Harford County (see ECF 2) and was removed to this Court by defendants on the basis of diversity of citizenship. *See* ECF 1 (Notice of Removal); 28 U.S.C. §§ 1331, 1446.

According to the Notice of Removal, plaintiff is a citizen of Maryland, Chase is a citizen of Ohio, and Rushmore is a citizen of Delaware. ECF 1, ¶¶ 8-10. Moreover, although not stated in the Notice of Removal, I note that the case also involves a federal question. *See* ECF 18 at 15-16 (alleging violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq*.).

Both defendants have moved to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 19 (Chase); ECF 21 (Rushmore). The motions are supported by memoranda of law. ECF 19-1 (collectively with ECF 19, "Chase Motion"); ECF 21-1 (collectively with ECF 21, "Rushmore Motion") (together, the "Motions"). Defendants submitted several exhibits with the Motions. Plaintiff opposes the Motions. ECF 23 ("Opposition to Chase Motion"); ECF 25 ("Opposition to Rushmore Motion"). Defendants replied. ECF 29 ("Chase Reply"); ECF 28 ("Rushmore Reply").

No hearing is necessary to resolve the Motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motions in part and deny them in part.

## I. Factual and Procedural Background[2]

Plaintiff alleges that she obtained a mortgage loan in 2008, and that Chase was the servicer of this loan from April 9, 2013, until February 1, 2016. ECF 18, ¶¶ 6-7. On February 1, 2016, Rushmore took over service of the loan. *Id.* ¶ 7.

According to the Amended Complaint, Chase, through its substitute trustees, filed a foreclosure action against plaintiff on January 14, 2014. *Id.* ¶ 8. Throughout the foreclosure process, plaintiff alleges that Chase "misled [her] to believe the home was not in jeopardy" in order to "ensure the homeowner would fail to defend herself in the foreclosure action." *Id.* ¶ 9.

In particular, plaintiff alleges that on an unspecified date she submitted a completed loan modification application. *Id.* ¶ 10. Thereafter, on November 26, 2014, Chase sent plaintiff the Loan Modification Letter. ECF 18-2. The Loan Modification Letter outlined the terms of a proposed loan modification, and represented that Chase would modify plaintiff's loan if she

---

[2] In view of the procedural posture of the case, I must accept as true the facts alleged in the Complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

made three monthly trial payments of $1,510.25 on January 1, 2015, February 1, 2015, and March 1, 2015. ECF 18, ¶ 10; *see also* ECF 18-2.

The Loan Modification Letter states, ECF 18-2 at 2: "If you make all of your payments during the trial period, we'll be able to permanently lower your payments." Further, the Loan Modification Letter advises, *id.*: "To accept this offer, you'll need to make your first monthly 'trial period payment' under your Trial Period Plan . . . . After you make all trial period payments on time, we will permanently modify your mortgage."

Plaintiff maintains that she "accepted the offer . . . by timely making all three payments." According to plaintiff, after she made the three trial payments, "Chase repeatedly assured [her] verbally that the home was no longer in jeopardy." ECF 18, ¶ 12. And, plaintiff contends that, as a result of the offer, she declined to pursue "other efforts to save the home, such as by filing defensive papers in the foreclosure action or attempting to restructure the loan in a bankruptcy action." *Id.* ¶ 11.

However, plaintiff insists that her loan was never modified, and instead Chase proceeded with the foreclosure action. *Id.* ¶¶ 13, 15. According to plaintiff, Chase filed a "Certification of Publication of Sale" on the foreclosure case's docket on August 5, 2015. *Id.* ¶ 13. When plaintiff contacted Chase about this notice, Chase allegedly "assured her that the home was not in jeopardy, and that the sale notice was a mere error." *Id.* ¶ 14.

Several months later, on February 1, 2016, Chase assigned the servicing rights to Rushmore. *Id.* ¶ 15. Plaintiff maintains that at this time she was "still in the midst of being considered for a loan modification." *Id.* However, plaintiff contends that Rushmore never made a final decision on plaintiff's loan modification application. *Id.* ¶ 15.4.

Instead, Rushmore scheduled a foreclosure sale for July 15, 2016. ECF 18, ¶ 16. Plaintiff moved to cancel the sale on July 14, 2016, but the motion was denied and the sale was ratified on September 23, 2016. *Id.*

According to plaintiff, throughout this process, "Chase and Rushmore acted with actual malice" "in furtherance of their profit motive." *Id.* ¶ 23. As a result, plaintiff suffered damages, which she alleges include the trial period payments she made, damage to her credit rating, and "other expenses associated with the loan modification application and foreclosure action," as well as noneconomic damages. *Id.* ¶ 24.

## II.    Legal Standards

### A.  Choice of Law

Although this case involves principles of both state and federal law, no party has addressed the matter of choice of law. The law of the forum state, Maryland, guides the Court's choice-of-law analysis. *See Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011) ("In a federal question [claim] that incorporates a state law issue, . . . a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise.").

In a contract claim, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law of the state where the contract was formed, unless there is a choice-of-law provision in the contract. *Am. Motorists Ins. Co. v. ARTRA Group, Inc.,* 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995). The Loan Modification Letter, which plaintiff alleges to be a contract, does not state a choice-of-law provision, but it appears to have been executed in Maryland. *See* ECF 18, ¶ 1. And, the Property is located in Maryland. *Id.* Accordingly, I will apply Maryland law in addressing plaintiff's contract claims.

For tort claims, Maryland applies the principle of *lex loci delicti,* i.e., the law of the "place of the alleged harm." *Proctor v. Washington Metropolitan Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010). Given the Property's location, the alleged harm would have occurred in Maryland. Accordingly, I will look to Maryland law with respect to the analysis of plaintiff's claims sounding in tort.

In sum, except with respect to the issues of federal law that control plaintiff's RESPA claim, I will apply Maryland law.

### B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading

standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual

allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007). However, without converting a motion to dismiss to a motion for summary judgment, a court may properly consider documents expressly incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint by reference and authentic.'" *U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v.*

*Generations Federal Credit Union*, 891 F.3d 508, 512-13 (4th Cir. 2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004).

To be "integral" a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. "Accordingly, if a breach-of-contract plaintiff alleges a failure to perform an act required by the contract, the contract's description of the defendant's duties will prevail over the plaintiff's contrary characterization." *Id.* at 166. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.* at 167.

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint

and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

As noted, plaintiff attached the Loan Modification Letter to her Amended Complaint. *See* ECF 19 to ECF 19-8. And, defendants submitted several documents related to plaintiff's mortgage and the foreclosure on her home. *See* ECF 19-2; ECF 21-2 to 21-5. To the extent these exhibits are integral to the Amended Complaint, I may consider them without converting the Motions to ones for summary judgment. *See, e.g.*, *Goines*, 822 F.3d at 166.

## C. Rule 9(b)

Plaintiff alleges two claims against defendants that sound in fraud: Count I, for Violations of the MCPA, and Count IV, for fraud.

As a preliminary matter, claims that sound in fraud, whether rooted in common law or arising under a statute, implicate the heightened pleading standard of Fed. R. Civ. P. 9(b). *See, e.g.*, *E-Shops Corp. v. U.S. Bank N.A.*, 678 F.3d 659, 665 (8th Cir. 2012) ("Rule 9(b)'s heightened pleading requirement also applies to statutory fraud claims."); *see also Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (stating that an MCPA claim that "sounds in fraud[] is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)").

Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Under the rule, a plaintiff alleging claims that sound in fraud "'must, at a minimum, describe the time, place, and contents of the false representations,

as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.,* 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted).  In other words, "'Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'"  *Crest Construction II, Inc. v. Doe,* 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted).

Rule 9(b) serves several salutary purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . .  Second, Rule 9(b) exists to protect defendants from frivolous suits.  A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery.  Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).

Notably, however, Rule 9(b) by its plain text permits general averment of aspects of fraud that relate to a defendant's state of mind.  And, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*  Moreover, Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of material facts, as opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'"  *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (quoting *Flynn v. Everything Yogurt*, HAR-92-3421, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993)).

### III.    Discussion

### A.  Res Judicata

Chase asserts in its Motion that all of plaintiff's claims against Chase are barred by the doctrine of res judicata.  *See* ECF 19-1 at 8-11.  In particular, Chase asserts that on August 20, 2015, plaintiff filed suit *pro se* in this Court against Chase and several other defendants.  ECF 19-1 at 5-6; *see Green-Wright v. Federal National Mortgage Association et al.*, Case No. GLR-15-2476, at ECF 1.  The case was assigned to Judge George L. Russell, III.  In that case, plaintiff alleged that the promissory note secured by the deed of trust to her home had been improperly transferred from one defendant to another, in breach of the mortgage agreement, and that the defendants had fraudulently misrepresented and concealed the ownership of the deed of trust to her home.  *See* GLR-15-2476, ECF 1.  The case was filed shortly after plaintiff had been informed of what appears to be a separate foreclosure proceeding from the one at issue in this case. *See id.* ¶¶ 27-30.

Judge Russell granted the defendants' motion to dismiss the case.  He determined that the defendants owed no contractual duty to plaintiff to inform her of when ownership of her loan was transferred, and that plaintiff had failed to state a claim for fraud.  *See* GLR-15-2476, ECF 14.  As a result, the case was dismissed, with prejudice.  *Id.*

According to Chase, plaintiff "has not alleged a single fact <u>against Chase</u> in this action that was not known to her" when she filed her prior suit.  ECF 19-1 at 10.  And, Chase contends that "all the claims concern the same subject matter and transactions as her prior suit."  *Id.* at 11.  Therefore, Chase insists that plaintiff's claims in this suit are barred.  *Id.*

Res judicata, or claim preclusion, is a judicial doctrine by which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of

action." *Montana v. United States,* 440 U.S. 147, 153 (1979). The doctrine is intended to preclude parties from "contesting matters that they have had a full and fair opportunity to litigate," thereby conserving judicial resources and minimizing the possibility of inconsistent decisions. *Id.* at 153-54.

Res judicata applies when the following three elements are present: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties or their privies in the two suits." *Young-Henderson v. Spartanberg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir. 1991) (quoting *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981)). Of import here, "[a] plaintiff's invocation of a different legal theory in the subsequent action" does not preclude application of res judicata. *Onawola v. Johns Hopkins Univ.*, AMD-07-870, 2007 WL 5428683, at *1 (D. Md. Sept. 24, 2007); *see* Restatement (Second) of Judgments § 24(2) cmt. c (1982).

It is undisputed that Judge Russell's dismissal of plaintiff's prior case was a final decision on the merits, and both plaintiff and Chase were parties in that case. Therefore, the only issues are "'whether the claim presented in the new litigation arises out of the same transaction or series of transactions as the claim resolved by the prior judgment' and whether 'the claims could have been brought in the earlier action.'" *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017) (quoting *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008)) (internal quotation marks omitted).

In my view, this case arises from a different transaction or set of transactions from plaintiff's prior suit, even though both suits concern her property. In the case before Judge Russell, plaintiff's claims arose from the alleged transfer of her promissory note from one loan servicer to another. *See* GLR-15-2476, ECF 14 at 1. By contrast, plaintiff's causes of action in

this case concern her loan modification application and the subsequent foreclosure sale, which she alleges constitute "dual-tracking." *See* ECF 18. This is a different transaction, and thus plaintiff's claims based on her loan modification application are not barred by res judicata.

Indeed, it appears that plaintiff could not have brought her current claims along with her 2015 suit, even if she had she desired to do so. Plaintiff's claim for violation of RESPA arises from the confluence of (1) her pending loan modification application, and (2) the foreclosure sale of her home in 2016. *See* ECF 18, ¶¶ 22.1-22.3. The foreclosure sale had not occurred when plaintiff filed her prior suit.

Furthermore, it is unclear whether plaintiff could have brought her MCPA, fraud, and breach of contract claims against Chase in the earlier suit. After completing the trial period plan, plaintiff alleges that Chase assured her that her home was not in jeopardy. ECF 18, ¶ 12. And, it continued to do so at least into August 2015, when plaintiff filed her prior suit. *See id.* ¶ 14. As a result, it is not clear that plaintiff's claim for breach of contract had accrued until after that time, because it may well have appeared that Chase had not breached its alleged contract.

Because plaintiff's claims for breach of contract, fraud, and violations of the MCPA are based on allegations of actions by Chase that continued at least into August 2015, I cannot conclude that those claims were available to plaintiff when she filed her prior suit, based on a distinct, if related, set of circumstances. Likewise, because plaintiff's RESPA claim could not have accrued until the foreclosure sale of her home in 2016, that claim is not barred by res judicata.

### B. MCPA Violations

Plaintiff alleges that defendants violated the MCPA in their dealings with plaintiff. The MCPA is "intended to provide minimum standards for the protection of consumers in the State."

C.L. § 13-303(a); *see also Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 140, 916 A.2d 257, 276 (2007). It is liberally construed in order to achieve its consumer protection objectives. *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013) (citing *State v. Cottman Transmissions Sys., Inc.,* 86 Md. App. 714, 587 A.2d 1190, 1204 (1991)).

## 1.

Among other things, it is unlawful under the MCPA for a person to use unfair or deceptive trade practices related to the extension of consumer credit or the collection of consumer debts. C.L. § 13-301; *see Piotrowski v. Wells Fargo Bank, N.A.*, DKC-11-3758, 2013 WL 247549, at *10 (D. Md. Jan. 22, 2013). C.L. § 13-301(1) defines unfair or deceptive trade practices as, *inter alia*: (1) "False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;" and (2) "Failure to state a material fact if the failure deceives or tends to deceive." *See Marshall v. James B. Nutter & Co.*, 816 F. Supp. 2d 259, 266 (D. Md. 2011) (explaining that "the MCPA prohibits both the use of false or misleading statements and also the omission of material facts").

For both material misrepresentation and material omission claims under the MCPA, a party must prove reliance. *Bezmenova v. Ocwen Fin. Corp.*, AW-13-003-AW, 2013 WL 3863948, at *5 (D. Md. July 23, 2013); *see also Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 533 (D. Md. 2011) ("The requirement of reliance flows from the MCPA's prescription that the party's 'injury or loss' be 'the result of' the prohibited practice . . . ."). With respect to a material misrepresentation, "[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Mitchell Living Trust*, 822 F. Supp. 2d at 533 (citations omitted). In contrast, "a consumer relies

on a material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information." *Id.* at 535.

An individual bringing a private cause of action pursuant to the MCPA must establish an actual injury or loss sustained as a result of a prohibited practice. *See Marchese*, 917 F. Supp. 2d at 465; *see also Allen v. CitiMortgage, Inc.*, CCB-10-2740, 2011 WL 3425665, at *10 (D. Md. Aug. 4, 2011) (explaining that under the MCPA "an individual may only bring a claim if she can 'establish the nature of the actual injury or loss that he or she allegedly sustained as a result of the prohibited practice'" (quoting *Lloyd*, 397 Md. at 148, 916 A.2d at 280)); *Lloyd,* 397 Md. at 143, 916 A.2d at 277 (concluding that a plaintiff must demonstrate that he or she "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation").

Plaintiff alleges that Chase used unfair or deceptive trade practices under C.L. § 13-301(1) when it promised that plaintiff would receive a loan modification that brought the loan current and reduced her mortgage payments, in addition to promising that plaintiff's home was not in jeopardy. ECF 18, ¶ 21.1. According to the Complaint, plaintiff relied on Chase's promises by "failing to take any defensive action in the foreclosure action []until it was too late . . . ." *Id.* ¶ 21.3. In my view, plaintiff has satisfactorily pleaded that Chase misled her about the availability of a loan modification by mailing her the Loan Modification Letter.

Furthermore, plaintiff has plausibly alleged that she "has suffered economic damages, in the form of trial period payments, damage to her credit rating, and other expenses associated with the loan modification application and foreclosure action." ECF 18, ¶ 24. To be sure, plaintiff cannot base an MCPA claim on the allegation that she was damaged by paying a debt

she already owed.  *See Willis v. Countrywide Home Loans Servicing, L.P.*, CCB-09-1455, 2009 WL 5206475, at *6 (D. Md. Dec. 23, 2009).  However, other judges of this Court have previously concluded that damage to a credit score and emotional damages can suffice to state a claim under the MPCA.  *See, e.g.*, *Marchese*, 917 F. Supp. 2d at 468, *Allen*, 2011 WL 3425665, at *10.  As a result, I find that plaintiff has stated a claim under C.L. § 13-301(1).

**2.**

Plaintiff has also alleged that defendants violated C.L. §§ 13-301(14)(iii) and 14-202(8) by "claiming, attempting, or threatening to enforce a right with knowledge that the right did not exist," when defendants carried out the foreclosure sale on plaintiff's property in 2016.  ECF 18, ¶ 32.  Presumably, the "right" to which plaintiff refers is the right to foreclose on plaintiff's home.  Chase asserts that plaintiff offers no factual allegations that Chase took any part in the foreclosure sale in 2016.  ECF 19-1 at 16.  I agree, and plaintiff appears not to dispute this contention in the Chase Opposition.

Furthermore, Rushmore maintains that plaintiff cannot allege that it sought to enforce a right with the knowledge that the right did not exist, because the Circuit Court for Harford County ratified the foreclosure sale, which Rushmore insists "creat[ed] *res judicata* as to the validity of the sale."  ECF 21 at 10 (citing *Manigan v. Burson*, 160 Md. App. 114, 120, 862 A.2d 1037, 1041 (2004)).  Plaintiff does not address or dispute this assertion in plaintiff's Opposition to Rushmore Motion.

Therefore, to the extent that plaintiff alleges a claim against defendants under these specific provisions of the MCPA, it is subject to dismissal.

## C. Breach of Contract and Detrimental Reliance

### 1.

Plaintiff also states a claim for breach of contract and detrimental reliance.  According to plaintiff, Chase mailed her the Loan Modification Letter, which she maintains constituted an offer.  ECF 18, ¶ 11.  Indeed, the Loan Modification Letter states, ECF 18-2 at 2: "To accept this offer, you'll need to make your first monthly 'trial period payment' under your Trial Period Plan."  Plaintiff alleges that she accepted the offer by making the requisite payments, as suggested by the letter.  ECF 18, ¶ 11.  And, she alleges that Chase breached this agreement by failing to offer her a loan modification, as promised by the letter.  *Id.* ¶ 13.

In strikingly similar circumstances, the Fourth Circuit, in an unpublished opinion construing Virginia law, ruled that an offer of a trial period plan accepted by a borrower constitutes an enforceable contract.  *Neil v. Wells Fargo Bank, N.A.*, 596 F. App'x 194, 197 (4th Cir. 2014).  Other courts, including this one, have reached the same conclusion.  *See Allen*, 2011 WL 3425665 at *5-6; *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 352 (D. Mass. 2011).  And, this case presents none of the "qualifying language" presented in other cases that would cause the Loan Modification Letter to "fall[] short of the definiteness required to make a contract."  *Spaulding*, 714 F.3d at 778.  As a result, I conclude that at this stage plaintiff has stated a viable claim for breach of contract.

As to Rushmore, plaintiff alleges: "Defendant Rushmore assumed Chase's obligations under the contract when Chase assigned Rushmore the servicing rights."  ECF 18, ¶ 57.  In the Rushmore Motion, Rushmore merely asserts, ECF 21 at 14: "Plaintiff has yet to show any instance of contract with Rushmore . . . ."  Rushmore fails to address plaintiff's contention of

assignee liability.  Therefore, I shall not dismiss plaintiff's breach of contract claim against Rushmore.

## 2.

Plaintiff also asserts a claim for detrimental reliance, or promissory estoppel, alleging that she relied to her detriment on Chase's representations that it would modify her loan.  ECF 18, ¶¶ 36-41.  Promissory estoppel "is an alternative means of obtaining contractual relief."  *Maryland Transp. Auth. Police Lodge #34 of the Fraternal Order of Police, Inc. v. Maryland Transp. Auth.,* 195 Md. App. 124, 215, 5 A.3d 1174, 1227 (2010),  *rev'd on other grounds*, 420 Md. 141, 21 A.3d 1098 (2011); *see also Suburban Hosp., Inc. v. Sampson*, 807 F. Supp. 31, 33 (D. Md. 1992) (applying Maryland law and stating that "the nature of a lawsuit in which promissory estoppel is invoked remains that of an action to enforce a contract"); *Pavel Enterprises, Inc. v. A.S. Johnson Co.*, 342 Md. 143, 169, 674 A.2d 521, 534 (1996)  ("[T]here are different ways to prove that a contractual relationship exists . . . .  Traditional bilateral contract theory is one. Detrimental reliance [a.k.a. promissory estoppel] can be another.").

The elements of a claim for promissory estoppel or detrimental reliance in Maryland were established in the touchstone case of *Pavel Enterprises, Inc.*, 342 Md. at 166, 674 A.2d at 532 (emphasis and footnote omitted):

1) a clear and definite promise;
2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;
3) which does induce actual and reasonable action or forbearance by the promisee; and
4) causes a detriment which can only be avoided by the enforcement of the promise.

*Accord Citiroof Corp. v. Tech Contracting Co., Inc.*, 159 Md. App. 578, 589, 860 A.2d 425, 432 (2004); *Konover Prop. Trust, Inc. v. WHE Associates, Inc.*, 142 Md. App. 476, 484, 790 A.2d 720, 724 (2002).

In support of her claim, plaintiff contends that the Loan Modification Letter constituted a clear and definite promise by Chase, which justifiably induced plaintiff to make the three indicated trial payments. ECF 18, ¶ 11. However, plaintiff alleges that Chase did not honor the promise made in the Loan Modification Letter. *Id.* ¶ 13.

In the Chase Motion, Chase argues that "Green-Wright has failed to allege the existence of any written loan modification contract signed by Chase." ECF 19-1 at 17-18. However, plaintiff does allege—and attach—a written commitment from Chase to *provide* a loan modification if plaintiff fulfilled a number of requirements, which plaintiff alleges she did. *See* ECF 18, ¶¶ 10-11; ECF 18-2. And, as discussed in the context of plaintiff's MCPA claims, plaintiff's reliance on Chase's promises was to the detriment of, *inter alia*, her credit rating. ECF 18, ¶ 24. Thus, plaintiff states a viable claim for detrimental reliance.

Plaintiff's only allegation of promissory estoppel with respect to Rushmore is that "Defendant Rushmore shares liability with Chase as its assignee." ECF 18, ¶ 42. However, once again, the Rushmore Motion does not address this theory of liability, and so I shall not dismiss plaintiff's claim for detrimental reliance against Rushmore.

## D. Violations of RESPA

Plaintiff alleges that defendants violated RESPA by unlawfully scheduling and proceeding with a foreclosure sale while plaintiff's loan modification application was still pending. ECF 18, ¶¶ 22.1-22.3, 47.

Congress enacted RESPA in order "to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the [mortgage loan] settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices . . . ." 12 U.S.C. § 2601.  RESPA has been read remedially in favor of greater coverage to further its goals of providing more information for consumers and preventing abusive practices by servicers.  *See Weisheit v. Rosenberg & Assocs., LLC*, JKB-17-0823, 2017 WL 5478355, at *3 (D. Md. Nov. 15, 2017) (citing cases).  It is implemented by Consumer Financial Protection Bureau ("CFPB") regulations, collectively known as "Regulation X."  *See* 12 C.F.R. §§ 1024.1 *et seq.*

Among other proscriptions, Regulation X prohibits a practice known as "dual-tracking."  *See* 12 C.F.R. § 1024.41(g).  Dual-tracking is a loan servicer's practice of moving towards foreclosure while simultaneously engaging in the loss mitigation process with the borrower.  *See id.*  Section 1024.41(g) provides:

> Prohibition on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
> > (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
> >
> > (2) The borrower rejects all loss mitigation options offered by the servicer; or
> >
> > (3) The borrower fails to perform under an agreement on a loss mitigation option.

Of relevance here, if the servicing rights to a loan are transferred from one entity (Chase) to another (Rushmore), "the transferee servicer must comply with the requirements of this section for that loss mitigation application within the timeframes that were applicable to the transferor servicer . . . ." 12 C.F.R. § 1024.41(k)(1)(i).

If a loan servicer violates a provision of Regulation X, a borrower may recover any actual damages. *See* 12 U.S.C. § 2605(f)(1)(A). However, a servicer need not comply with the requirements of 12 C.F.R. § 1024.41(g) if "the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." 12 C.F.R. § 1024.41(i).

According to the Amended Complaint, plaintiff applied for, and accepted, an offer of a loan modification. ECF 18, ¶¶ 10, 12. Further, plaintiff alleges that, during the pendency of her loan modification application, Chase filed a Certification of Publication of Sale. *Id.* ¶ 13. And, plaintiff asserts that following the transfer of loan servicing rights to Rushmore, Rushmore scheduled and completed a foreclosure sale of plaintiff's home, without ever making a final decision on plaintiff's loan modification application. *Id.* ¶¶ 15.4, 16.

Chase contends that plaintiff has not stated a claim against it, because Chase never actually conducted a foreclosure sale or caused one to occur. ECF 19-1 at 12-13. Rather, the foreclosure sale happened months after Chase transferred the loan to Rushmore. *Id.* at 12; *see also* ECF 18, ¶¶ 15-16.

Plaintiff argues that Chase's actions in filing a Certification of Publication of Sale in August 2015 constituted dual-tracking under RESPA. ECF 23 at 9-10. However, as Chase points out, "[n]othing in § 1024.41(g) prevents a servicer from proceeding with the foreclosure

process, including any publication . . . so long as any such steps in the foreclosure process do not cause or directly result in the issuance of a foreclosure judgment or order of sale, or the conduct of a foreclosure sale . . . ." Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01, at 10897-98.

The Amended Complaint contains no factual allegations to support the theory that Chase caused the foreclosure sale to occur. As a result, plaintiff's RESPA claim against Chase is subject to dismissal.

However, plaintiff clearly states a claim for RESPA violations against Rushmore. The Rushmore Motion addresses plaintiff's RESPA claim in three scant paragraphs, and fails to explain why the claim should be dismissed. *See* ECF 21 at 11-12. First, Rushmore contends that because filings in the State court foreclosure action indicate that plaintiff was attempting to sell the property prior to the foreclosure sale, "she cannot now claim to have been engaged in a loan modification review at the time of sale." *Id.* Rushmore fails to elaborate on this proposition, and cites no authority for its application.

Next, citing 24 C.F.R. § 1024.41(i) for the rule that a servicer need only comply with Regulation X for a single loss mitigation application, Rushmore asserts that plaintiff's loan modification application "ended in an approval for a trial modification plan going from January through March 2015." ECF 21 at 12. According to Rushmore, this trial modification served as the single loss mitigation application, and therefore Rushmore was not obliged to comply with Regulation X. *Id.* This contention is erroneous. There is no basis to conclude that the trial period of three monthly payments, which plaintiff alleges she timely made (ECF 18, ¶ 11), constituted a final decision on plaintiff's loan modification application. Plaintiff's RESPA claim against Rushmore survives.

### E. Fraud

Under Maryland law, "'[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Sass v. Andrew*, 152 Md. App. 406, 432, 832 A.2d 247, 261 (2003) (citation omitted). Regardless of the particular theory, the plaintiff must establish the elements of fraud "by clear and convincing evidence." *Md. Envir. Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512, 516 (2002).

In an action for fraudulent misrepresentation, which is the garden variety of fraud and often is described simply as "fraud," the plaintiff ordinarily must show:

> 1) that the defendant made a false representation to the plaintiff;
>
> 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth;
>
> 3) that the misrepresentation was made for the purpose of defrauding the plaintiff;
>
> 4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and
>
> 5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S&R, Inc.*, 334 Md. 398, 415, 639 A.2d 660, 668 (1994); *accord Thomas v. Nadel*, 427 Md. 441, 451 n.18, 48 A.3d 276, 282 n.18 (2012); *Sass*, 152 Md. App. at 429, 832 A.2d at 260.

To be actionable, a false representation "must be of a material fact." *Gross v. Sussex, Inc.*, 332 Md. 247, 258, 630 A.2d 1156, 1161 (1993). "A 'material' fact is one on which a reasonable person would rely in making a decision," *Sass*, 152 Md. App. at 430, 832 A.2d at 260, or a fact that "'the maker of the misrepresentation knows . . . [the] recipient is likely to regard . . . as important.'" *Gross*, 332 Md. at 258, 630 A.2d at 1161 (citation omitted). The "misrepresentation must be made with the deliberate intent to deceive," *Sass*, 152 Md. App. at 430, 832 A.2d at 260 (citing *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704, 715 A.2d 188 (1998)), and the defendant must "know[ ] that his representation is false" or be "recklessly

indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity." *Ellerin v. Fairfax Savings, F.S.B.*, 337 Md. 216, 232, 652 A.2d 1117 (1995).

A "defendant's deliberate misrepresentation of his existing intentions, where the misrepresentation was material to the transaction giving rise to the alleged fraud, may form the basis for an action in fraud or deceit." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 197, 665 A.2d 1038, 1048 (1995) (citations omitted). And, a "speaker's statement of what he or she will do in the future may constitute a representation of the speaker's present intention, which may support an action for negligent misrepresentation." *Gross*, 332 Md. at 272, 630 A.2d at 1169 (citing *Weisman v. Conners*, 312 Md. 428, 454-58, 540 A.2d 783, 796 (1988)).

Plaintiff alleges that Chase "made false representations of material facts," i.e., the representation that plaintiff would be offered a loan modification and that her home was not in jeopardy. *See* ECF 18, ¶¶ 9, 18. Notably, however, plaintiff does not allege the date or specific source of Chase's representation that plaintiff's home was not in jeopardy. Yet, "[t]he mere failure to carry out a promise in contract . . . does not support a tort action for fraud." *Strum v. Exxon Co.*, 15 F.3d 327, 331 (4th Cir. 1994) (construing North Carolina law).

Further, plaintiff asserts that Chase's representations were made with knowledge of their falsity or reckless indifference to the truth. ECF 18, ¶ 51. She baldly contends that, at the relevant time, Chase never intended to grant plaintiff a loan modification, and always intended to foreclose on her home. ECF 18, ¶¶ 13.1, 17. But, there are no factual allegations to support such assertions.

In the context of Fed. R. Civ. P. 9(b), the *Strum* Court said that dismissal was appropriate "[b]ecause [the plaintiff] ha[d] done nothing more than assert that [defendant] never intended to honor its obligations under the . . . agreement." *Strum*, 15 F.3d at 331. The same logic applies

here.  Although plaintiff's contract and MCPA claims shall advance, plaintiff does not state a plausible claim for fraud under the heightened pleading standards of Rule 9(b).

### IV.     Conclusion

For the reasons stated above, I shall GRANT the Chase Motion with respect to Count III, for violations of RESPA, and Count IV, for fraud.  And, I shall GRANT the Rushmore Motion with respect to Count IV, for fraud.  Otherwise, the Motions are DENIED.

An Order follows, consistent with this Memorandum Opinion.


Date:   August 7, 2018                                         _____/s/_____
                                                                                Ellen Lipton Hollander
                                                                                United States District Judge